974 F.2d 1331
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
REYNOLDS ASSOCIATES, t/a The Essex House, a Virginia Limited
Partnership; Community Management Corporation,
Plaintiffs-Appellants,
and
Lucinda MORALES; Rose Snider; Marcia Townsend; Patsy
Constantino; Eileen Snith; Lolita Jones, Plaintiffs,
v.
Jack KEMP, Secretary of Housing and Urban Development,
Defendant-Appellee.
 No. 91-2255.
 United States Court of Appeals,
Fourth Circuit.
 Argued: March 4, 1992
Decided: August 28, 1992
 
 Argued: Susan M. Parnas, Beach, Butt & Associates, P.C., Alexandria, Virginia, for Appellants.
 Steven M. Goldstein, Trial Attorney, United States Department of Housing and Urban development, Washington, D.C., for Appellee.
 On Brief: Barbara P. Beach, Beach, Butt & Associates, P.C., Alexandria, Virginia, for Appellants.
 John W. Herold, Associate General Counsel for Litigation, Howard M. Schmeltzer, Assistant General Counsel, United States Department of Housing and Urban Development, Washington, D.C.; Richard Parker, Assistant United States Attorney, Alexandria, Virginia, for Appellee .
 Before ERVIN, Chief Judge, NIEMEYER, Circuit Judge, and RAMSEY, Senior United States District Judge for the District of Maryland, sitting by designation.
 PER CURIAM:
 
 
 1
 Appellants, Reynolds Associates and Community Management Corporation of Maryland (jointly referred to as"Reynolds") appeal from the judgment of the district court dismissing their complaint pursuant to Fed. R. Civ. P. 12(c). We conclude that both this court and the district court are without jurisdiction in this case, and therefore affirm the judgment of the district court. Because it appears that exclusive jurisdiction lies with the Claims Court, we remand so that the district court may determine whether the interests of justice require transfer pursuant to 28 U.S.C. § 1631.
 
 I.
 
 2
 Appellants own and manage the Essex House, a low income apartment project in Alexandria, Virginia. This action arises out of the participation of the Essex House in two separate programs administered by the Department of Housing and Urban Development ("HUD").
 
 
 3
 First, the Essex House participates in HUD's Section 236 Mortgage Insurance and Interest Reduction program, pursuant to 12 U.S.C. § 1715z-1 and 24 C.F.R. § 236 (1990), under which it receives both mortgage insurance and direct subsidy payments intended to reduce the interest payments on its mortgage, and thereby enable it to charge lower rents to its tenants. Under the Section 236 program, a participating owner must obtain approval from HUD before increasing its rents. In the event that a request for rent increase is based on the need to pass along operating expenses, the expenses must first be approved by HUD as valid. See 24 C.F.R. § 245.305.
 
 
 4
 Second, the Essex House formerly participated in HUD's Section 8 Loan Management Set Aside program ("LMSA") under which a percentage of its rental units were reserved for low income tenants whose rent was subsidized by HUD.[1] See 42 U.S.C. § 1437f. In March, 1989, Reynolds terminated its participation in the LMSA, but agreed to extensions of its two existing LMSA contracts until 1990 and 1991. In July, 1990, prior to the expiration of either LMSA contract, Reynolds notified the Essex House tenants that it no longer planned to participate in the set-aside program, but that tenants could continue to receive rent subsidies by participating in the Section 8 Housing Voucher program.
 
 
 5
 Unlike the LMSA, the Housing Voucher program is not administered directly by HUD. Rather, the Housing Voucher program required the Essex House to enter into a Housing Voucher contract with the Alexandria Redevelopment Housing Authority ("ARHA"), a local public housing agency. ARHA administers the Housing Voucher program on a local level and receives subsidy funding from HUD pursuant to a separate contract between ARHA and HUD. Upon execution of the Housing Voucher contract and compliance with the other requirements of the program, Essex House would have been entitled to receive a portion of its participating tenants' rents directly from ARHA.
 
 
 6
 In September, 1990, Reynolds informed ARHA that it would participate in the Housing Voucher program only if ARHA would agree to several significant modifications to the usual HUD Housing Voucher contract.[2] ARHA did not agree to the modifications, and advised Reynolds that it would not receive subsidy payments under the Housing Voucher program until it executed the standard contract. On September 27, 1990, a group of Essex House tenants sued Reynolds, seeking an order compelling it to participate in the Housing Voucher program under the standard HUD contract provisions. The court denied the tenants' motion for preliminary injunction, and ultimately granted Reynolds' motion for summary judgment. Peyton v. Reynolds Associates, No. 90-331-A (E.D. Va. 1990), aff'd, 955 F.2d 247 (4th Cir. 1992).
 
 
 7
 Reynolds thereafter renewed its request to HUD for permission to enter into a modified Housing Voucher contract with ARHA. HUD denied this request. Reynolds also requested, pursuant to the requirements of the Section 236 program, that HUD allow the attorneys' fees incurred in defending Peyton v. Reynolds as a project expense. Finally, Appellants sought permission to increase the Essex House rents by 34%. HUD refused to allow the attorneys' fees as valid expenses, and while it eventually permitted a 28% rent increase, it failed to issue final approval until six months after the initial request.
 
 
 8
 On March 1, 1991, Reynolds and seven Essex House tenants commenced this action, seeking damages and specific performance against HUD.[3] The complaint set forth nine claims for relief, which were loosely couched in terms of breach of contract, tort, deprivation of constitutional rights, and "HUD's arbitrary and capricious actions." In September, 1991, HUD filed a motion to dismiss, or in the alternative, for judgment on the pleadings. After a hearing on the motion, the district court found that, with respect to the tort counts, Reynolds had failed to identify any waiver of sovereign immunity applicable to its damage claims, and further concluded that no private right of action existed under which HUD's alleged arbitrariness could, if proved, entitle the plaintiffs to relief. The district court therefore granted the motion and dismissed the complaint.[4]
 
 
 9
 In its brief on appeal, Reynolds has recast its claims in simpler terms, asserting only the right to recover damages based on four allegedly arbitrary acts committed by HUD: (1) HUD's refusal to negotiate modifications to the terms of the standard Section 8 Housing Voucher Contract, (2) HUD's refusal to approve Reynolds' attorneys' fees as normal operating expenses pursuant to the Section 236 contract, (3) HUD's failure to respond in a timely manner to Reynolds' request for a rent increase under the Section 236 program, and (4) HUD's refusal to reimburse Reynolds for rent under the Section 8 Housing Voucher program.[5] Because we conclude that the district court lacked subject matter jurisdiction over Reynolds' claims, we affirm its dismissal of the complaint without reaching the merits. See Portsmouth Redevelopment & Housing Auth. v. Pierce, 706 F.2d 471, 473 (4th Cir. 1983), cert. denied, 464 U.S. 960 (1983).
 
 II.
 
 10
 It is well established that suits seeking monetary relief against the Secretary in his official capacity are treated as actions against the sovereign, and are therefore subject to the limitations of the doctrine of sovereign immunity. See General Railway Signal Co. v. Corcoran, 921 F.2d 700, 704 (7th Cir. 1991); Portsmouth, 706 F.2d at 473. "Waiver of sovereign immunity is a jurisdictional prerequisite in the nature of, but not the same as, subject matter jurisdiction, in that unless sovereign immunity be waived, there may be no consideration of the subject matter." J.C. Driskill, Inc. v. Abdnor, 901 F.2d 383, 385 n.4. (4th Cir. 1990), citing Hans v. Louisiana, 134 U.S. 1 (1890). We dispose of this appeal on the ground that no applicable waiver of sovereign immunity exists within the scope of the district court's subject matter jurisdiction.
 
 
 11
 Appellants first assert that this case was cognizable by the district court under the waiver of sovereign immunity contained in 5 U.S.C. § 702.[6] It is plain, however, that § 702 does not waive the sovereign immunity of the United States in actions seeking money damages. Bowen v. Massachusetts, 487 U.S. 879 (1988). Reynolds has made clear that the only remedy it seeks on remand is damages and its reliance on § 702 is therefore misplaced.
 
 
 12
 At the hearing on the motion for judgment on the pleadings, the district court noted that no waiver of sovereign immunity applied to Reynolds' claims for relief sounding in tort. We agree. 28 U.S.C. § 1346(b) vests the district courts with exclusive jurisdiction over tort claims against the United States for money damages, and the Federal Tort Claims Act, 28 U.S.C. § 2671, et seq., contains the exclusive waiver of sovereign immunity in such cases. Under 28 U.S.C. § 2675(a), no tort action may be maintained against the United States unless the putative plaintiff first pursues the claim before the appropriate administrative agency. Because there is no indication on this record that Reynolds exhausted its administrative remedies as required by the FTCA, we conclude that the district court properly found that there was no waiver of sovereign immunity over the tort claims.
 
 
 13
 Reynolds has also claimed that the district court had subject matter jurisdiction over its damage claims under 42 U.S.C.s 1404a, which provides that the Secretary may "sue and be sued only with respect to its functions under the United States Housing Act of 1937, as amended [42 U.S.C. § 1437, et seq.] ... " Section 1404a governs suits related to Reynolds' claims under the Section 8 Housing Voucher program, and 12 U.S.C. § 1702, a similar provision contained in the National Housing Act, applies to its damage claims in connection with the Section 236 program. The "sue and be sued" language in both statutes has been consistently interpreted to waive sovereign immunity in actions brought against the Secretary, but not in those which in substance seek relief against the United States. See Falls Riverway Realty Inc. v. Niagara Falls, 754 F.2d 49, 55 (2d Cir. 1985); Portsmouth, supra, 706 F.2d at 475; Marcus Garvey Square, Inc. v. Winston Burnett Construction Co., 595 F.2d 1126, 1131 (9th Cir. 1979). Thus, these provisions waive sovereign immunity only where a damage award would be payable out of funds within HUD's exclusive control, "severed from Treasury Funds and Treasury Control." Falls Riverway Realty, 754 F.2d at 56, quoting Federal Housing Admin. v. Burr, 309 U.S. 242, 250 (1940). Where the recovery sought comes from the United States general treasury, sovereign immunity remains a bar. Burr, 309 U.S. at 250.
 
 
 14
 In Portsmouth, supra, we considered whether funds appropriated for distribution to public housing agencies under the United States Housing Act of 1937 were properly regarded as treasury funds. We held that "any monetary judgment recovered ... would expend itself on the public treasury. There is no 'separate fund' for the payment of operating subsidies within HUD's exclusive control,'the origin of which is not the public treasury.' " Id. at 473 (citations omitted). Because there is no waiver of immunity with respect to Reynolds' Housing Voucher program claims, the district court was without jurisdiction to hear them.
 
 
 15
 We next consider whether an award of damages in connection with HUD's actions under the Section 236 program would constitute an award against the United States or against a separate agency fund. This question has been the subject of disagreement among the Circuits. The Second and Fifth Circuits have held that judgments in claims involving mortgage insurance programs under the National Housing Act would be drawn from funds in the accounts of the agency, and not from general treasury funds. See S.S. Silberblatt, Inc. v East Harlem Pilot Block-Building 1 Housing Dev. Fund Co., 608 F.2d 28, 36 (2d Cir. 1979) (Claim based on 12 U.S.C.s 1715z-1); Industrial Indemnity, Inc. v. Landrieu, 615 F.2d 644 (5th Cir. 1980) (Claim based on 12 U.S.C. § 17151). The Ninth Circuit, however, has held that an award of funds out of the Section 236 program would in reality amount to judgment against the United States, and that § 1702 therefore does not waive sovereign immunity over such a claim. Marcus Garvey Square, supra. That court found that for jurisdictional purposes, the manner in which HUD treats Section 236 funds may cause those funds to lose their separate character, and that any subsequent judgment would necessarily involve collection from the treasury.
 
 
 16
 We agree with the Ninth Circuit's reasoning in Marcus Garvey Square, and find its treatment of recovery of Section 236 funds under 12 U.S.C. § 1702 to be consistent with our own definition of treasury funds under 42 U.S.C. § 1404a, as articulated in Portsmouth, supra. See also Carlyle Gardens Co. v. Delaware State Housing Auth., 659 F. Supp. 1300, 1305-07 (D. Del. 1987) (applying the reasoning in Portsmouth to Section 236 funds). We also note that the facts in this case do not require us to engage in the delicate determination of the character of a particular fund. Unlike Marcus Garvey Square, where the funds at issue had at one time been specifically identified to the proceeds of a certain mortgage, there is no allegation here that the damages Reynolds seeks would come from any specified fund whatsoever. Accordingly, we hold that any recovery by Reynolds under the Section 236 program would necessarily reach general treasury funds, and that 12 U.S.C. § 1702 provides no waiver of sovereign immunity in this case.[7]
 
 III.
 
 17
 Although no waiver of sovereign immunity exists on which the district court or this court may consider the merits of Reynolds' claims, the Tucker Act provides both a waiver of sovereign immunity and a grant of exclusive subject matter jurisdiction in the Claims Court. 28 U.S.C. §§ 1346(a)(2), 1491; United States v. Mitchell, 463 U.S. 206 (1983). In Portsmouth, supra, we discussed the three elements required for Claims Court jurisdiction: "[t]he action must be against the United States, seek monetary relief in excess of $10,000, and be founded upon the Constitution, federal statute, executive regulation, or government contract." Id. 706 F.2d at 473. We have already held that this is an action against the United States, and the record is clear that Reynolds seeks to recover an amount in excess of $10,000.
 
 
 18
 The Appellee argues, however, that the third requirement for Claims Court jurisdiction is not met in this case because no contract ever existed between Reynolds and HUD under the Housing Voucher program. While the Secretary is correct that a contract claim may only be brought under the Tucker Act by one in privity of contract with the United States, he ignores the fact that two of the four claims for damages asserted in the Appellant's brief, and the only claims pursued at oral argument, arise out of the Section 236 contract, to which HUD and Reynolds are parties. We are precluded from considering whether Reynolds has stated a claim upon which relief may be granted by a court of competent jurisdiction, but our opinion in the Portsmouth case compels the conclusion that the Claims Court has jurisdiction over the portion of this case relating to the Section 236 program.
 
 
 19
 Accordingly, we affirm the district court's dismissal of Reynolds' complaint, but remand the case for the limited purpose of effecting transfer to the Claims Court in the event that the district court finds that the interests of justice warrant transfer under 28 U.S.C. § 1631.
 
 AFFIRMED AND REMANDED
 
 
 [1]
 The Loan Management Set Aside program is not at issue in this case
 
 
 [2]
 The modifications in question concerned allowance of lease terms shorter than one year, and exemption from liability for the effects of asbestos present in the Essex House
 
 
 [3]
 The plaintiff tenants are not parties to this appeal
 
 
 [4]
 Appellants argue strenuously that the district court erred by considering the motion for judgment on the pleadings less than two weeks from the scheduled trial date. We disagree. "The determination whether the [12(c) ] motion constitutes a delay of trial is within the sound discretion of the judge. However, if it seems clear that the motion may effectively dispose of the case, the court should permit it regardless of any possible delay its consideration may cause." 5A Charles A. Wright & Arthur R. Miller, Federal Practice & Procedure § 1367 at 514 (1990)
 
 
 [5]
 At oral argument, Reynolds purported to limit its claims on appeal to damages under the Section 236 program
 
 
 [6]
 5 U.S.C. § 702 is part of the Administrative Procedure Act, 5 U.S.C. § 551, et seq. ("APA"). At the hearing on the motion to dismiss, Reynolds expressly disavowed any intent to seek relief under the APA. The language of the complaint, coupled with the statement of jurisdiction in Reynolds' brief on appeal, however, suggest that these statements were not intended to waive any rights under § 702
 
 
 [7]
 It is clear that while the "sue and be sued" clause in 42 U.S.C. § 1404a waives sovereign immunity, it does not contain an independent grant of subject matter jurisdiction. See Portsmouth, 706 F.2d at 475. In this Circuit, 12 U.S.C. § 1702 has been construed to provide a waiver of sovereign immunity, as well as a jurisdictional grant. Ferguson v. Union National Bank, 126 F.2d 753, 756-757 (4th Cir. 1942); Portsmouth, supra, at 475 (dictum). But see Bor-Son Building Corp. v. Heller, 572 F.2d 174, 181 (8th Cir. 1978); Ames-Ennis, Inc. v. Midlothian Ltd., 469 F. Supp. 939, 942 (D. Md. 1979). Because we find the jurisdictional prerequisite of a waiver of sovereign immunity in the district court to be lacking, we need not reach the question whether subject matter jurisdiction would exist under § 1702 or under any independent jurisdictional provision