REYNOLDS ASSOCIATES, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 93–397C.

United States Court of Federal Claims.

May 18, 1994.

Glenn M. Cooper, Bethesda, MD, for plaintiff.

Luis M. Matos, Washington, DC, with whom was Asst. Atty. Gen. Frank W. Hunger, for defendant.

## ORDER

NETTESHEIM, Judge.

This case is before the court on defendant's motion to dismiss for lack of jurisdiction pursuant to RCFC 12(b)(1), or alternatively, for failure to state a claim upon which relief can be granted under RCFC 12(b)(4). The action involves a claim for money damages for rents lost during agency delay in approving a rent increase and for failure to allow the increase to go into effect once approved. It also seeks reversal of an agency determination that attorneys' fees incurred during a prior suit were not reimbursable. Defendant resists jurisdiction on the ground that an agency handbook is not a regulation on which Tucker Act jurisdiction can be based and seeks dismissal on the merits on the basis that no actionable claim for breach has been stated. Argument is deemed unnecessary.

## FACTS

Reynolds Associates ("plaintiff") owns and operates the Essex House apartments in Alexandria, Virginia. On March 1, 1973, plaintiff entered into a regulatory agreement with the Secretary of the United States Department of Housing and Urban Development ("HUD") under section 236 of the National Housing Act of 1934, 12 U.S.C. §§ 1715b, 1715z–1 (1988 & Supp. IV 1992). The regulatory agreement allowed plaintiff to participate in HUD's mortgage insurance program, whereby the Secretary makes, or contracts to make, periodic interest reduction payments for the owners of low-income family rental housing projects in order to reduce the rental rates for tenants. 12 U.S.C. § 1715z–1. Plaintiff's apartments are covered by the regulatory agreement.

Under the regulatory agreement HUD approval is required before the owner can increase rental rates paid by tenants. Plaintiff submitted a rent-increase request to HUD for the subject apartments on January 31, 1991, because its net operating revenues fell below the mortgage payments. According to plaintiff, HUD's Insured Project Servicing Handbook 4350.1 CHG–49, ch. 7, § 4 (Sept. 1970) (the "HUD Handbook"), requires that the HUD Field Office ascertain whether an owner's submitted rent-increase request is complete within five working days after receipt. Furthermore, plaintiff asserts that under the HUD Handbook a request for additional information should be made within 30 days of receipt and a decision letter issued within 30 days after all necessary documents are received.

Plaintiff alleges that it received verbal information in late March 1991 that HUD was processing the request and expected it to be approved. In the interim plaintiff had insufficient net income without the rent increase, and its mortgage payments fell in arrears. HUD notified plaintiff in a letter of April 4, 1991, that at that time it found justified only 8.8 percent of plaintiff's requested 34–percent increase. No Management Improve-

ment Plan ("MIO plan") had been received despite a May 1989 request, and rent payments that exceeded operating and MIO plan costs were not placed in escrow as required. Plaintiff alleges that it had provided HUD with an MIO plan in March 1990. In the same April 4, 1991 letter, HUD requested additional information needed to process plaintiff's rent-increase request. Because this request was not made within 30 days of the rent-increase request, plaintiff asserts that HUD's request was untimely. Further, plaintiff alleges that the information HUD requested "was already available to HUD." Plf's Br. filed Feb. 3, 1994, at 4. On April 17, 1991, plaintiff notified HUD that its MIO plan had been submitted over a year before and no funds were available to escrow. Yet, according to plaintiff, HUD failed to timely reprocess its rent-increase request.

On May 2, 1991, HUD, as insurer of plaintiff's mortgage, received notice from plaintiff's mortgage company that plaintiff was in default. Later, on May 28, 1991, HUD approved a 28-percent rent increase. Plaintiff asserts that, after it received HUD's approval, it posted the required notice to its tenants of the July 1, 1991 rent increase. Then, on or about June 27, 1991, HUD informed plaintiff that it could not implement the rent increase on July 1 because additional notice to the tenants was required, thereby delaying the rent increase at least another 75 days. Plaintiff alleges that the additional notice was not dictated by either the HUD Handbook or applicable regulations.

During July 1990 plaintiff notified its tenants that it would no longer participate in another HUD program, a section 8 Loan Management Set Aside Program, 42 U.S.C. § 1437(f) (1988) (the "section 8 program"), whereby a percentage of rental units are reserved for low-income tenants who receive rent subsidies from HUD. The section 8 program required that plaintiff enter into a housing voucher contract with a local housing authority. According to defendant, after the local housing authority refused to grant certain modifications to allow plaintiff's continued participation in the section 8 program, a group of plaintiff's tenants filed suit in September 1990, to compel plaintiff to partici-

pate. *Peyton v. Reynolds Assoc.*, No. 90–331–A (E.D.Va. Jan. 15, 1991) (unpubl.), *aff'd*, 955 F.2d 247 (4th Cir.1992). Plaintiff prevailed on summary judgment in the district court and the Fourth Circuit affirmed.

After the affirmance in *Peyton*, plaintiff renewed its request that HUD allow certain modifications in its housing voucher contract with the local housing authority and requested that under the section 236 regulatory agreement HUD reimburse attorneys' fees incurred in defending the *Peyton* suit which plaintiff asserted were a project expense. *See Reynolds Assoc. v. Kemp*, 1992 WL 207747 at *2, 1992 U.S.App. LEXIS 20727 at *5 (4th Cir.1992) (unpubl.). HUD denied the requested modification and refused to allow the attorneys' fees as valid expenses. *Id.* A review of the HUD denial dated February 4, 1991, reveals HUD's determination that "[t]he fees were incurred because of the owner's determination to opt out of the Section 8 [ ] program, . . ." and that the fees would not have been incurred if plaintiff had "entered into [a different] Section 8 [ ] [program] as urged by HUD and [the local housing authority]. . . ."

The present suit had its genesis in a district court action filed by plaintiff, a management corporation, and seven tenants of the project in the United States District Court for the Eastern District of Virginia on March 1, 1991. Plaintiffs sought to recover damages based on allegations of four arbitrary acts committed by HUD: (1) HUD's refusal to negotiate with respect to modifying the standard section 8 housing voucher contract; 2) HUD's refusal under the section 236 regulatory agreement to approve plaintiff's attorneys' fees as normal operating expenses; 3) HUD's failure to process timely plaintiff's rent-increase request under the section 236 program; and 4) HUD's refusal under the section 8 housing voucher program to reimburse plaintiff for rent. The district court dismissed the action for lack of jurisdiction and further concluded that plaintiffs were not entitled to the relief sought. *Reynolds Assoc.*, 1992 WL 207747 at *2, 1992 U.S.App. LEXIS 20727 at *6–7.

On appeal, the Fourth Circuit ruled that the United States Court of Federal Claims

had jurisdiction over the claims arising under the section 236 regulatory agreement and allowed the district court to decide whether to transfer a portion of the case under 28 U.S.C. § 1631 (1988). *Reynolds Assoc.*, 1992 WL 207747 at *4–5, 1992 U.S.App. LEXIS 20727 at **15–16. Aside from the claims arising under the section 236 regulatory agreement, the Fourth Circuit affirmed the district court's dismissal of the remainder of the case for lack of jurisdiction. The court stated that it was precluded from determining whether plaintiffs failed to state a claim before a court of competent jurisdiction. On remand the district court transferred the case to the Court of Federal Claims.

## DISCUSSION

### 1. *Subject matter jurisdiction*

■ The allegations of the complaint are to be construed favorably to the pleader when evaluating a motion to dismiss for lack of subject matter jurisdiction. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974). Thus, the court must accept as true the facts alleged in the complaint. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 747 (Fed.Cir.1988). Although defendant asserts that the court has no subject matter jurisdiction over plaintiff's claim, it is undisputed that plaintiff and the Secretary of HUD entered into a contract when the regulatory agreement covering the subject property was signed back in March 1973. The Tucker Act, 28 U.S.C. § 1491(a)(1) (1988 & Supp. IV 1992), confers jurisdiction on the Court of Federal Claims regarding "any express or implied contract with the United States...." This grant of authority does not include torts. *Eastport S.S. Corp. v. United States*, 178 Ct.Cl. 599, 609, 372 F.2d 1002, 1013 (1967).

Although HUD allegedly failed to process plaintiff's rent-increase request in a reasonable manner, which failure might be deemed negligent and therefore tortious behavior, the court is not stripped of jurisdiction when a tortious breach of contract is alleged. *L'Enfant Plaza Properties, Inc. v. United States*, 227 Ct. Cl. 1, 11, 645 F.2d 886, 892 (1981). The Court of Claims held that jurisdiction exists under the Tucker Act only where the

Government's contractual obligations and the alleged tortious conduct are directly connected, not where the conduct is merely related in a general sense to "contractual obligations" between the parties. Here, such a direct connection is present, and thus, the court has jurisdiction.

### 2. *Motion to dismiss for failure to state a claim*

■ In evaluating a motion to dismiss for failure to state a claim the facts alleged in the complaint are construed in the light most favorable to the non-moving party. *Scheuer v. Rhodes*, 416 U.S. at 236, 94 S.Ct. at 1686. If no set of facts exists that would entitle plaintiff to relief, the claim should be dismissed. *Mostowy v. United States*, 966 F.2d 668, 672 (Fed.Cir.1992).

### a. *Incorporation of the HUD Handbook into the regulatory agreement*

Plaintiff states that it is seeking relief for breach of contract, not for violation of the HUD Handbook. Plaintiff asserts that the HUD Handbook is incorporated into its regulatory agreement with the Secretary of HUD. Plaintiff states that it "explicitly agreed" in the regulatory agreement to comply with National Housing Act provisions and regulations adopted thereunder. Plf's Br. filed Feb. 3, 1994, at 10. According to plaintiff, HUD implements and requires compliance with the above provisions and regulations by means of the HUD Handbook; therefore, mutuality is lacking unless the HUD Handbook is incorporated into the agreement, thereby binding HUD, as well, to its requirements.

Defendant argues that although plaintiff alleges a breach of contract under the regulatory agreement, plaintiff's claim fails because HUD had no express or implied contractual duty to process plaintiff's rent-increase requests within any particular time frame. Although plaintiff asserts that the HUD Handbook requires HUD to issue a decision letter within 30 days after all necessary documents are received, this requirement applies only when an alternative rent mechanism is used. The alternative rent mechanism cannot be

used for projects insured under section 236. HUD Handbook ch. 7, § 4 at 3, 3.E. Therefore, the HUD Handbook fails to require that a rent-increase request be processed within a particular time period.

Even if the HUD Handbook obligated HUD as plaintiff alleges, the HUD Handbook was not incorporated into the agreement. A close inspection of the first page of the section 236 regulatory agreement dated March 1, 1973, reveals that plaintiff agreed to comply with the contract provisions set forth in the agreement, among other reasons, "in order to comply with the requirements of section 236 of the National Housing Act, as amended, and the Regulations adopted by the Commissioner pursuant thereto...." No incorporation of the HUD Handbook into the agreement appears either directly by express language or indirectly through the referenced regulations. Nor were the HUD Handbook provisions themselves, with which HUD is accused of failing to comply in this instance, set forth in the regulatory agreement.

In *Texas v. United States,* 210 Ct.Cl. 522, 537 F.2d 466 (1976), the Court of Claims held that circulars, which the plaintiff alleged provided for reimbursement for certain costs, were an insufficient basis to support a claim for breach of the parties' agreement. 210 Ct.Cl. at 531, 537 F.2d at 470–71. The court stated that plaintiff's argument suffered a "critical defect" in that the circulars were not incorporated into the parties' agreement, and did not explicitly require defendant to bear such costs. A party must rely on the express obligations of its agreement, rather than attempt to bring into the agreement requirements not expressed therein. The court also noted that HUD neither promulgated the circulars as regulations, as the agreement used the term, nor were they attached to or identified in the agreement. *Id.*

Under a similar analysis the same result obtains in the case at bar. It was not the intent of HUD to promulgate the HUD Handbook as a regulation. If this were the intent, presumably HUD would have codified the HUD Handbook requirements in the Code of Federal Regulations (the "CFR").

Although the CFR provides procedures for processing rent-increase requests, no time limit for reviewing such requests is set forth. Moreover, HUD did not obligate itself expressly to pay lost rents should it fail to comply with the HUD Handbook procedures.

Plaintiff's mere allegation that additional notice to tenants was not mandated by either the HUD Handbook or regulations before the rent increase could go into effect is insufficient to avoid dismissal. The court's independent review of the applicable regulations, 24 CFR §§ 245.305–245.330 (1991), reveals that after HUD issues a decision on a rent-increase request, "[t]he mortgagor must make the reasons for approval, adjustment, or disapproval known to the tenants, by service of notice on them as provided in § 245.-15." 24 CFR § 245.325(b). This section references the method of notice required, but no time period is set forth. Section 245.310 also addresses notice to tenants:

(a) At least 30 days before submitting a request to HUD for approval of an increase in maximum permissible rents, the mortgagor must notify the tenants of the proposed rent increase. Copies of the notice must be served on the tenants as provided in § 245.15. The notice must contain the following information in the following format or an equivalent format:

. . . .

HUD will approve, adjust upward or downward, or disapprove the proposed rent increase upon reviewing the request and comments. When HUD advises us in writing of its decision on our request, you will be notified. If the request is approved, any allowable increase will be put into effect only after a period of *at least 30 days* from the date you are served with that notice and in accordance with the terms of existing leases.

(b) The mortgagor must comply with all representations made in the notice....

24 CFR § 245.310 (emphasis added). Thus, at least 30 days notice is required before any allowable rent increase can go into effect. Therefore, HUD is not precluded under either section from requiring a notice period of

greater than 30 days.[1] As noted above, any notice requirement of the HUD Handbook is not binding on the agency.

■ Plaintiff argues that the contract lacks mutuality if the HUD Handbook is not incorporated into the regulatory agreement. HUD agreed to make interest reduction payments on plaintiff's loan in exchange for plaintiff's agreement to abide by the requirements set forth in the regulatory agreement. HUD's only obligation was making the interest reduction payments as agreed. Plaintiff unilaterally cannot place additional requirements upon HUD.

b. *Whether the HUD Handbook is an executive regulation*

■ Although plaintiff does not so contend, the HUD Handbook, on its own, fails to rise to the level of an executive regulation sufficient to establish independent jurisdiction under the Tucker Act. Defendant argues that neither the regulatory agreement nor the regulations cited by plaintiff expressly address either the time frame for processing a rent-increase request or the consequences for failure to process a request in a timely manner. As noted above, the applicable regulations fail to impose any time limit on the processing of such a request.

■ Defendant implies that the Administrative Procedure Act, 5 U.S.C. §§ 551–559, 701–706 (1988) (the "APA"), applies. It is not altogether clear whether this is the case.[2] If the APA does apply and were the HUD Handbook to be considered the equivalent of a regulation, the HUD Handbook would have to meet the two requirements set forth by the Supreme Court in *Chrysler Corp. v. Brown*, 441 U.S. 281, 301–04, 99 S.Ct. 1705, 1717–18, 60 L.Ed.2d 208 (1979), in order to have the force of law. *Horner v. Jeffrey*, 823 F.2d 1521, 1529 (Fed.Cir.1987).

In *Chrysler* the Supreme Court stated that a regulation "must have certain substantive characteristics and be the product of certain procedural requisites." 441 U.S. at 301, 99 S.Ct. at 1717. The Court defined a " 'sub-stantive rule' " or " 'legislative-type rule' " as one " 'affecting individual rights and obligations,' " that make it potentially " 'binding' or hav[ing] the 'force of law.' " *Id.* at 301–02, 99 S.Ct. at 1717–18 (citation omitted). The "procedural requisites" are that the regulation be promulgated under authority given by Congress and by the procedural requirements set forth by Congress. *Id.* at 302–03, 99 S.Ct. at 1717–18. Both requisites must be met in order for "substantive rules" or "legislative-type rules" to have the "force of law." *Id.* at 301–03, 99 S.Ct. at 1717–18. In essence the Court set forth that there are "substantive rules," which may have the force of law if both requisites are satisfied, and "interpretive rules, general statements of policy, or rules of agency organization, procedure, or practice,' " which do not have the "force of law." *Id.* (quoting the APA § 553(b), (d)).

■ The HUD Handbook provides procedures for processing rent-increase requests. The statement of purpose for the chapter states that the primary interest of HUD in the preparation of the chapter was to promote efficient management and viability of the projects. HUD Handbook 4350.1 CHG–49 ch. 7, § 1. While, allegedly, this primary interest was not followed in this case, the statement is a general statement of policy. The HUD Handbook sets forth "rules of agency organization, procedure, or practice." Therefore, under the APA the HUD Handbook does not have the "force of law" and HUD is not bound by its contents. If the APA does not apply, then the HUD Handbook does not have the status of a rule of law.

Although plaintiff cannot rely on the regulations as mandating a 30–day notice period (hence, a 75–day period would be deemed unreasonable) or rely on the HUD Handbook, the applicable regulation stipulates a notice period of "at least 30 days." Plaintiff alleges that the notice period that HUD required in this case was 75 days. Upon plaintiff's challenge in its complaint that 75 days was unreasonable, the burden shifts to defen-

---

1. This is not to say that HUD is free to require a notice period that is unreasonable.

2. The APA does not apply to matters involving "public property, loans, grants, benefits, or contracts." 5 U.S.C. § 553(a)(2).

dant, as the proponent of dismissal, to show that the period was not unreasonable or that the contract would not allow as a measure of damages the value of lost rent.

### c. *Attorneys' fees*

Plaintiff also challenges HUD's denial of plaintiff's request for reimbursement of attorneys' fees expended in defending a suit by its tenants in the latter's attempt to compel plaintiff to continue participation in a HUD section 8 program. Plaintiff prevailed on summary judgment in *Peyton v. Reynolds Assoc.*, No. 90–331–A (E.D.Va., Jan. 15, 1991) (unpubl.), *aff'd*, 955 F.2d 247 (4th Cir.1992), but HUD denied plaintiff's request for reimbursement of attorneys' fees because plaintiff voluntarily made a decision to no longer participate in the section 8 program.

Plaintiff asserts that ¶ 6(b) of the regulatory agreement allows an owner, "upon the Commissioner's consent, to pay for reasonable operating expenses." Plf's Br. filed Feb. 3, 1994, at 10. Attorneys' fees attributable to the normal operation of the project are reasonable operating expenses, according to plaintiff. Moreover, plaintiff maintains that legal fees incurred in defending lawsuits arising out of the operation of a project might be considered reasonable and necessary under the regulatory agreement. Because plaintiff, incident to its everyday operations, made a business decision not to enter into a different program, these fees should "be considered to concern the everyday operation of the enterprise," according to plaintiff. *Id.* at 11. Thus, plaintiff charges that HUD breached ¶ 6(b) of the regulatory agreement.

█ Paragraph 6(b) of the regulatory agreement sets forth that no owner can expend any project funds without prior written approval from the Commissioner, "except for reasonable operating expenses and necessary repairs." Defendant correctly notes that the cases cited by plaintiff address the circumstances wherein it is appropriate for an owner to spend project funds on attorneys' fees, not when HUD should reimburse attorneys' fees. The court agrees that plaintiff has failed to cite any statutory or contractual obligation of HUD to reimburse plaintiff for attorneys' fees.

The cases that plaintiff cites do not support its claim for reimbursement. As HUD determined, the attorneys' fees stemmed not from defending a lawsuit that arose out of operating the project, but, rather, out of plaintiff's decision not to participate in a section 8 program. Therefore, no basis exists on which to disturb HUD's denial of reimbursement.

### CONCLUSION

Accordingly, based on the foregoing,

**IT IS ORDERED, as follows:**

1. Defendant's motion under RCFC 12(b)(1) is denied; its motion under RCFC 12(b)(4) is granted to the extent indicated.

2. The balance of defendant's motion is converted to a motion for summary judgment pursuant to RCFC 12(b)(4).

3. By June 3, 1994, defendant may file a brief seeking summary judgment on the basis that HUD's requiring that notice be posted for 75 days was not unreasonable or that the measure of damages sought by plaintiff cannot be recovered under its regulatory agreement with HUD. If defendant does not do so, the court will set a discovery deadline and schedule trial.