ST. NICHOLAS APARTMENTS, a California limited partnership, T. Michael Wiley, and Charles A. Yates, on behalf of himself and on behalf of the class of all limited partners of the St. Nicholas Apartments, Plaintiffs,

v.

UNITED STATES of America, United States Department of Housing and Urban Development, Henry G. Cisneros, in his official capacity as Secretary of the Department of Housing and Urban Development, Federal Deposit Insurance Corp., as Receiver for American Diversified Savings Bank, American Diversified Partners, a California limited partnership, and American Diversified Investment Corp., general partner of American Diversified Partners, Defendants.

No. 96–3116.

United States District Court,
C.D. Illinois,
Springfield Division.

Nov. 8, 1996.

Jeffrey W. Finke, Chicago, Lance T. Jones, Springfield, IL, for plaintiffs.

James A. Lewis, Cheryl Stickel Neal, Springfield, IL, for defendants.

## OPINION

RICHARD MILLS, District Judge:

Should a provision in a HUD Manual be given the force of law?

No.

## I. FACTS ALLEGED IN AMENDED COMPLAINT

On or about December 1, 1981, the United States Department of Housing and Urban Development ("HUD") insured a first mortgage for St. Nicholas Apartments under Section 221(d)(4) of the National Housing Act, 12 U.S.C. § 1715 *et seq.*, on a multifamily housing project located at 400 E. Jefferson Street, Springfield, Illinois. St. Nicholas Apartments is a California limited partnership whose general partner, at the time, was Ranbir S. Sahni ("Sahni"). St. Nicholas Apartments' only substantial asset is the multifamily housing project located in Springfield.

During the mid 1980s, Sahni bought a Savings and Loan and transferred his interest in St. Nicholas Apartments to American Diversified Savings Bank ("ADSB") which was a service corporation of Sahni's Savings and Loan. Thereafter, the general partnership interest in St. Nicholas Apartments was owned by American Diversified Partnership ("ADP"), a California limited partnership of which American Diversified Investment Corporation ("ADIC") was the general partner. A few years later, ADSB, like so many other Savings and Loan during the 1980s, folded. When the Federal Savings and Loan Insurance Corporation failed, the Federal Deposit Insurance Corporation ("FDIC"), in effect, inherited the general partnership interest in St. Nicholas Apartments along with ADP.

On or about October 27, 1988, the FDIC assigned St. Nicholas Apartments' mortgage to HUD because of a default in payments. The housing project had severe financial problems and was physically deteriorated. Therefore, the FDIC and ADP wanted to transfer the general partnership interest in St. Nicholas Apartments to another party.

Plaintiffs state that in exchange for Plaintiff T. Michael Wiley's ("Wiley") agreement to become St. Nicholas Apartments' general partner, the FDIC and ADP proposed to assign to him a claim for $1,600,000.00 in advances owed to the general partner of St. Nicholas Apartments. However, those advances could not be paid to the general partner until the St. Nicholas Apartments achieved some measure of financial stability.

On December 16, 1988, Wiley, through "Group B.W. Holdings, Inc.", agreed to acquire the general partnership interest in St. Nicholas Apartments. Plaintiffs claim that the agreement stated that HUD's approval of the proposed transaction and HUD's acceptance of a workout arrangement were mandatory conditions precedent of the transfer of the general partnership interest.

Plaintiffs claim, but HUD denies, that HUD accepted a final workout agreement with Wiley. Plaintiffs claim that despite having entered into this agreement, HUD has announced its intentions to foreclose on St. Nicholas Apartments' mortgage. Plaintiffs argue that had HUD lived up to its agreement and followed its own rules and regulations, HUD would not be in a position to foreclose on the mortgage. For purposes of the present motion, Plaintiffs argue in Counts IV and V of their amended complaint that if the Court finds that the final workout agreement is not binding on HUD, the Court should rescind the transfer of St. Nicholas Apartments' general partnership interest from the FDIC and ADP to Wiley and should unwind all other transactions from January 18, 1990 to the present.

Accordingly, Plaintiffs ask the Court (1) to declare that Plaintiff Charles A. Yates may represent the class of limited partners and to certify the class, (2) to determine whether HUD is bound to comply with the terms of the final workout agreement, (3) to determine who owns the general partnership interest in St. Nicholas Apartments, (4) to rescind Wiley's general partnership interest and transfer it back to the FDIC and ADP, if necessary, (5) to order an accounting, if necessary, (6) to issue an injunction preventing HUD from foreclosing on St. Nicholas Apartments, and (7) to award attorneys' fees.

## II. LEGAL STANDARD FOR MOTIONS TO DISMISS

In ruling on a motion to dismiss, the Court "must accept well pleaded allegations of the complaint as true. In addition, the Court must view these allegations in the light most favorable to the plaintiff." *Gomez v. Illinois State Board of Education,* 811 F.2d 1030, 1039 (7th Cir.1987). Although a complaint is not required to contain a detailed outline of the claim's basis, it nevertheless "must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." *Car Carriers, Inc. v. Ford Motor Co.,* 745 F.2d 1101, 1106 (7th Cir. 1984), *cert. denied,* 470 U.S. 1054, 105 S.Ct. 1758, 84 L.Ed.2d 821 (1985). Mere conclusions, without supporting factual allegations, are insufficient to support a claim for relief. *Cohen v. Illinois Institute of Technology,* 581 F.2d 658, 663 (7th Cir.1978), *cert. denied,* 439 U.S. 1135, 99 S.Ct. 1058, 59 L.Ed.2d 97 (1979). Dismissal is not granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957).

## III. ANALYSIS

■ Defendants' first argument is that rescission is an extraordinary equitable remedy which is not available absent substantial nonperformance or breach by a party to the agreement. Defendants claim that because Plaintiffs have not pled fraud and/or mistake specifically pursuant to Federal Rule of Civil Procedure 9(b), Plaintiffs' claim must be based upon a claim of substantial nonperformance or breach of contract. As such, Defendants argue that rescission is not appropriate because the contract which was allegedly breached was between HUD and Plaintiffs. Defendants state that they were not a party to the contract between Wiley and HUD, so there is no privity of contract. Therefore, rescission is not available.

Plaintiffs argue that HUD rules and regulations call for a reconveyance of the property to Defendants if Plaintiffs' final workout plan was not accepted by HUD. Therefore, the property should be transferred back to Defendants if the Court finds that there was no breach of the contract between Wiley and HUD. Plaintiffs state that HUD rules and regulations were incorporated into Plaintiffs' and Defendants' contract for the transfer of the general partnership interest in St. Nicholas Apartments as a matter of law. Additionally, Defendants claim that under California law (the law which applied to their contract), contracts can be construed together whether or not each of the contracts were signed by all or only some of the parties to the transaction.

The issue to be determined by the Court is whether or not the provision of the HUD Manual recited in paragraph 27 of Plaintiffs' Amended Complaint should be given the force of law and if so, to determine whether the provision has been incorporated into the contract between Plaintiff Wiley and Defendants ADP and FDIC.

### A.

■ As a general rule, "[l]aws which subsist at the time and place of the making of a contract, and where it is to be performed, enter into and form part of it, as fully as if they had been expressly referred to or incorporated in its terms." *Norfolk & Western R.R. Co. et al. v. American Train Dispatchers' Assoc. et al.,* 499 U.S. 117, 130, 111 S.Ct. 1156, 1164, 113 L.Ed.2d 95 (1991), quoting *Farmers' and Merchants' Bank of Monroe v. Federal Reserve Bank of Richmond,* 262 U.S. 649, 660, 43 S.Ct. 651, 655–56, 67 L.Ed. 1157 (1923); *see, Selcke v. New England Ins. Co.,* 995 F.2d 688, 689 (7th Cir.1993) (Illinois law); *see also Kern v. City of Long Beach et al.,* 29 Cal.2d 848, 850, 179 P.2d 799, 800 (Cal.1947) (California law). Furthermore, HUD regulations generally have the force of law. *Wright v. City of Roanoke Redev. and Hous. Auth.,* 479 U.S. 418, 431, 107 S.Ct. 766, 774, 93 L.Ed.2d 781 (1987).

■ However, not all administrative manuals, handbooks, and circulars have the force of law. *Thorpe v. Hous. Auth. of City of Durham,* 393 U.S. 268, 275–76, 89 S.Ct. 518, 522–23, 21 L.Ed.2d 474 (1969). In order for

a regulation to have the force and effect of law, it must create substantive or legislative rules, not just suggest an interpretation of a statute. *Chrysler Corp. v. Brown*, 441 U.S. 281, 301, 99 S.Ct. 1705, 1717, 60 L.Ed.2d 208 (1979); *Cosby v. Ward*, 843 F.2d 967, 979 (7th Cir.1988). "Likewise the promulgation of these regulations must conform with any procedural requirements imposed by Congress." *Chrysler Corp.*, 441 U.S. at 303, 99 S.Ct. at 1718; *Cosby*, 843 F.2d at 979. "Federal agencies, however, are required to publish 'substantive rules of general applicability' in the Federal Register, even if the rules are not first published for notice and comment." *Id.* at 980; *see First State Bank of Hudson County v. United States*, 599 F.2d 558, 564 (3rd Cir.1979) (generally, handbooks that have not been published in accordance with the Administrative Procedure Act, 5 U.S.C. § 500 *et seq.*, are considered to be non-binding instructions or internal operating procedures). Publication in the Federal Register is unnecessary, though, if "persons subject thereto are named and either personally served or otherwise have actual notice thereof in accordance with law." 5 U.S.C. § 553(b).[1]

The HUD regulation quoted in paragraph 27 of Plaintiffs' Amended Complaint is set forth in HUD Notice 84–37, commonly referred to as the "TPA Handbook." *United-Parker Square Limited Partnership v. Kemp*, 1992 WL 52556, at *1 (D.D.C.1992) (unpubl). In the instant case, the TPA Handbook has not been published in either the Code of Federal Regulations ("CFR") or the Federal Register, and Plaintiffs have offered no evidence that HUD intended the Handbook to carry the force of a substantive rule or regulation without first being published in the CFR or the Federal Register.

An inspection of the case law throughout the country reveals that, generally, manuals such as the one involved in the instant case have not been given the force of law: *Reynolds Assoc. v. United States*, 31 Fed.Cl. 335, 338–40 (1994) (HUD project servicing hand-

book does not rise to the level of an executive regulation); *Roberts v. Cameron–Brown Co.*, 556 F.2d 356, 362 (5th Cir.1977) (HUD handbook held not to be intended to have the force of law); *Cosby*, 843 F.2d at 980–81 (Department of Labor letters not intended to have the force of law); *First State Bank of Hudson County*, 599 F.2d at 564 (FDIC manual does not create an enforceable duty on the part of the FDIC to inform a bank about misapplication of its funds by the bank's president); *Schweiker v. Hansen*, 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981) (Social Security Administration claims manual held to be without legal effect); *Powderly v. Schweiker*, 704 F.2d 1092, 1098 (9th Cir.1983) (Social Security Administration claims manual held to be without impact on any substantive rights); *Gatter v. Nimmo*, 672 F.2d 343, 347 (3rd Cir.1982) (Veterans Administration manuals held to be without the force of law); and *Brennan v. Ace Hardware Corp.*, 495 F.2d 368, 376 (8th Cir.1974) (field operation handbooks held to be without the force of law). Accordingly, the Court finds that the TPA Handbook in the instant case did not have the force of law.

Furthermore, Defendants were not given actual notice of the HUD regulation. Title 5 U.S.C. § 553(b) allows enforcement of an administrative rule without first being published if the notice includes "(1) a statement of the time, place, and nature of public rule making proceedings; (2) reference to legal authority under which the rule is proposed; and (3) either the terms or substance of the proposed rule or description of the subjects and issues involved." There is no evidence to show that Defendants had actual notice or were personally served with notice of the TPA Handbook. *Cosby*, 843 F.2d at 980. Accordingly, the Court finds that the HUD manual was not incorporated into the contract as a matter of law.

**B.**

In addition, the Court finds that the HUD manual was not incorporated into the con-

---

1. Although 5 U.S.C. § 553(a)(2) states that the Administrative Procedure Act does not apply to matters "relating to agency management or personnel or to public property, loans, grants, benefits, or contracts", HUD has expressed a policy of promulgating all of its substantive rules in accordance with 5 U.S.C. § 553(b). 24 C.F.R. § 10.1; *e.g. Rousseau v. City of Philadelphia*, 589 F.Supp. 961, 971 (E.D.Pa.1984).

tract (Exhibit 1 to the Amended Complaint) between Plaintiff Wiley and Defendants FDIC and ADP by the contract's terms.[2] Within the four corners of the contract, there are four references to HUD rules and regulations. Paragraph 4 states that "GBW (Plaintiff) will pay the legal costs associated with obtaining HUD approval." Paragraph 5 (viii) states that GBW "will provide to HUD and the Sellers ... monthly pro forma income and expense reports...." Clearly, neither of these references are a sufficient basis to incorporate the TPA Handbook's provision into the contract.

However, paragraphs 5(i) & (ii) state that the Seller's obligation to consummate the deal will be based upon the conditions precedent of "obtaining HUD's approval of the transactions contemplated hereby; [and] the Partnership's entering into a workout arrangement for the existing HUD-insured mortgage loan on terms and conditions that are acceptable to the lender for such loan and HUD, Seller and GBW." While it could be argued that these provisions provide for an incorporation the TPA Handbook's provision into the contract, the Court cannot say that the HUD manual and its provision at issue in this case have been incorporated into the contract by the contract's express language.

Because the HUD manual has not been given the effect of law, the contract must incorporate or reference the HUD manual by express language. *Reynolds Assoc.*, 31 Fed. Cl. at 339. Plaintiffs' Amended Complaint fails to reference, incorporate, or set forth in any way that the agreement is to be subject to the HUD TPA Handbook. *Id.*; *Texas v. United States*, 537 F.2d 466, 470–71, 210 Ct.Cl. 522 (1976). Accordingly, the Court finds that the HUD manual was not incorporated into the agreement by the terms of the contract between Wiley and Defendants FDIC and ADP.

■ Finally, just because the FDIC and HUD are both a part of the United States Government does not mean that the FDIC had actual notice of HUD's manual pursuant to 5 U.S.C. § 553(b). Title 12 U.S.C. § 1819(b)(1) grants the FDIC government administrative agency status "for the purposes of section 1345 of Title 28." Title 28 U.S.C. § 1345 is a jurisdictional statute giving the district courts original jurisdiction over all civil actions commenced by the United States, its agencies, or officers. Title 28 U.S.C. § 1819 does not indicate that the FDIC has federal agency status for all purposes. On the contrary, the FDIC has agency status only for purposes of 28 U.S.C. § 1345. *Bank of New England Old Colony, N.A. v. Clark*, 986 F.2d 600, 603 (1st Cir. 1993).

The Court cannot say that the FDIC, even if labeled a Government agency for purposes of this case, had actual notice (as that term is used in 5 U.S.C. § 553(b)) of the HUD manual which would make it responsible for complying with that manual's provisions. HUD and the FDIC are both large entities with extensive rules and regulations. It is unrealistic to believe that just because both are Government agencies that each will know of the others rules and regulations without those rules or regulations having first been published or without the notice requirements set forth in 5 U.S.C. § 553(b) having first been met. Accordingly, the FDIC did not have actual notice of the provisions of the HUD manual, and therefore, its terms were not incorporated into the contract between Wiley and Defendants FDIC and ADP.

While Plaintiffs argue that equitable rescission is but one of the remedies sought in Count IV of their Amended Complaint, equitable rescission is the basis for all other remedies sought in Count IV. Therefore, if there is no equitable rescission of the contract between Plaintiff Wiley and Defendants

---

**2.** Although Plaintiffs characterize Exhibit 1 to the Amended Complaint as a "contract," the Court is unsure whether the exhibit is in fact a contract. While paragraph 11 states that "[t]his letter is intended to be, and shall be construed to be, a binding obligation of the Buyer and Seller", the initial paragraph states that the letter is "a summary of the basic terms and conditions upon which Sellers are willing to proceed with negotiations toward a definitive agreement (the 'Agreement') for assignment of the GP Interest and Receivables and purchase and sale of the options." Therefore, it appears that the letter may actually be an agreement to negotiate rather than a contract. However, the parties have not briefed this issue.

FDIC, ADP, and ADIC, then there are no grounds upon which relief may be granted. Likewise, Count V is premised upon Count IV. Count V's basis for relief is directly linked to the relief sought in Count IV, that is, a finding that Plaintiff Wiley does not own the general partnership interest in St. Nicholas Apartments. Because the Court has found that the general partnership interest cannot be reconveyed back to Defendants FDIC, ADP, and/or ADIC, Count V does not state a claim upon which relief may be granted.

## CONCLUSION

In summary, the Court finds that even under the broad standards of notice pleading and taking the facts in a light most favorable to Plaintiffs, Plaintiffs have failed to state a claim upon which relief may be granted. Fed.R.Civ.Pro. 12(b)(6). The provision from the HUD manual set forth in paragraph 27 of Plaintiffs' Amended Complaint does not have the force or effect of law and was not expressly incorporated into the contract between Wiley and FDIC, ADP, and ADIC by the contract's express terms. Accordingly, there are no grounds upon which to reconvey the general partnership interest in St. Nicholas Apartments from Wiley back to said Defendants. In short, Plaintiffs have failed to state a claim upon which relief may be granted against Defendants FDIC, ADP, and ADIC. Because the Court has found that Counts IV and V should be dismissed for failure to state a claim upon which relief may be granted, it will not consider Defendants' other arguments or their arguments in the alternative.

*Ergo,* Defendants Federal Deposit Insurance Corporation's, as receiver for American Diversified Savings Bank, American Diversified Partners', and American Diversified Investment Corporation's Motion to Dismiss Amended Complaint as Against said Defendants is ALLOWED.

Counts IV and V of Plaintiffs' Amended Complaint are DISMISSED.

Defendants Federal Deposit Insurance Corporation, as receiver for American Diversified Savings Bank, American Diversified Partners, and American Diversified Investment Corporation are DISMISSED WITH PREJUDICE.